UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MacNEIL AUTOMOTIVE PRODUCTS LIMITED d/b/a WEATHERTECH; and MacNEIL IP LLC,

Plaintiffs,

v.

YITA, LLC d/b/a Oedro or YitaMotor,

Defendant.

MacNEIL AUTOMOTIVE PRODUCTS LIMITED d/b/a WEATHERTECH; and MacNEIL IP LLC,

Plaintiffs,

v.

JINRONG (SH) AUTOMOTIVE ACCESSORY DEVELOPMENT CO., LTD.; and RUI DAI,

Defendants.

C20-278 TSZ
(consolidated with C20-856 TSZ)

ORDER

THIS MATTER comes before the Court on a motion, docket no. 116, brought by plaintiffs MacNeil Automotive Products Limited d/b/a WeatherTech® and MacNeil IP LLC (collectively, "MacNeil"), seeking to preclude defendants[1] from asserting invalidity

---

[1] MacNeil has named as defendants the following entities: (i) Yita, LLC d/b/a Oedro or YitaMotor ("Yita"); (ii) Jinrong (SH) Automotive Accessory Development Co., Ltd. ("Jinrong"); and (iii) Rui Dai. Rui Dai is either an individual who is a Chinese citizen or a distributor located in China that is operating under a personal name. See 2d Am. Comp. at ¶ 4 (No. C20-856 TSZ, docket no. 198). Rui Dai has not answered or otherwise appeared in this action, but MacNeil has made no motion to declare Rui Dai in default. In addition, although this case has been pending since April 2019, and the operative pleading has been in effect since November 2021, the record

ORDER - 1

1 defenses with regard to United States Patents Nos. 8,382,186 (the "'186 Patent") and
2 8,833,834 (the "'834 Patent") (collectively, the "patents-in-suit").[2]  Having reviewed all
3 papers filed in support of, and in opposition to, MacNeil's motion, the Court enters the
4 following Order.

5 **Background**

6    MacNeil commenced these consolidated actions in April 2019.  In 2020, both
7 cases were transferred from the Northern District of Illinois to this District pursuant to
8 the parties' concessions and/or stipulations.  *See* Order (docket no. 41); Minute Entry
9 (No. C20-856, docket no. 66).  On June 30, 2020, Yita filed four inter partes review
10 ("IPR") petitions; each pair of IPR petitions challenged one of the two patents-in-suit.
11 *See* Walters Decl. at ¶ 3 (docket no. 70).  The Court stayed this matter with respect to the
12 claims asserted against Yita, pending resolution of the IPR petitions, but denied Jinrong's
13 motion to stay, observing that Jinrong was not a party to any proceeding before the
14 United States Patent and Trademark Office Patent Trial and Appeal Board ("PTAB").
15 *See* Minute Order at ¶¶ 1–2 (docket no. 73).  On January 13, 2021, the PTAB granted
16 Yita's petitions to institute IPR2020-1139 (relating to the '186 Patent) and IPR2020-1142
17 (relating to the '834 Patent), but declined to institute IPR2020-1138 (relating to the
18 '186 Patent) and IPR2020-1140 (relating to the '834 Patent).

19 ───────────────

20 does not indicate whether Rui Dai has been served.  Within fourteen (14) days of the date of this
21 Order, MacNeil shall show cause why its claims against Rui Dai should not be dismissed without prejudice for failure to prosecute.  *See* Fed. R. Civ. P. 41(b).

22 [2] In this action, MacNeil also alleges infringement of United States Patents Nos. 8,899,655 and 9,138,917, but those patents are not at issue in the motion now before the Court.
23

ORDER - 2

In January 2022, the parties reported to the Court that the PTAB had issued final written decisions in both IPR proceedings, sustaining the patentability of all seven claims in the '186 Patent and the first twelve of fifteen claims in the '834 Patent. <u>See</u> Joint Status Report (docket no. 83). In March 2022, the Court lifted the stay as to MacNeil's claims against Yita. <u>See</u> Minute Order at ¶ 1 (docket no. 85). In April 2022, the PTAB issued a public version of its final written decision in IPR2020-1139, and in May 2022, the PTAB issued a public version of its final written decision in IPR2020-1142. The parties have not provided complete copies of these decisions, but the Court takes judicial notice of them and the associated IPR petitions, which are available at https://www.uspto.gov/patents/ptab. <u>See</u> Fed. R. Evid. 201.

In its pending motion, docket no. 116, MacNeil argues that Yita and Jinrong are precluded by judicial estoppel and/or IPR estoppel from asserting that the '186 and '834 Patents are invalid in light of prior art, and requests that all invalidity contentions as to the patents-in-suit be stricken. Yita and Jinrong respond that (i) judicial estoppel is not warranted because they have not, previously in this litigation, taken a position inconsistent with their present invalidity contentions, and (ii) MacNeil is attempting to improperly expand the scope of IPR estoppel.

**Discussion**

A.   **Judicial Estoppel**

Whether judicial estoppel applies is a matter of regional circuit law. <u>See</u> <u>Wang Labs., Inc. v. Applied Comput. Scis., Inc.</u>, 958 F.2d 355, 358 (Fed. Cir. 1992). The Ninth Circuit has described the equitable doctrine of judicial estoppel as preventing a party

ORDER - 3

from relying on an argument to prevail in one phase of the case and then offering a contradictory argument in an effort to succeed in another phase of the litigation.  See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 993 (9th Cir. 2012).  Although the Ninth Circuit had previously held that judicial estoppel applied only when a party's position was "tantamount to a knowing misrepresentation to or even fraud on the court," in light of an intervening Supreme Court decision, the Ninth Circuit now considers "chicanery or knowing misrepresentation" to be only a factor in the judicial estoppel analysis and not an "inflexible prerequisite" to its application.  Id. at 994–95 (citing New Hampshire v. Maine, 532 U.S. 742 (2001)).

In New Hampshire, the Supreme Court indicated that "several factors typically inform the decision whether to apply the doctrine in a particular case."  532 U.S. at 750.  These considerations include (i) whether the later position is "clearly inconsistent" with the earlier position, (ii) whether acceptance of both the previous and subsequent positions would create a perception that the court was misled on one or the other occasion; and (iii) whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.  Id. at 750–51.  The Supreme Court cautioned that it was not offering an "exhaustive formula" for determining when judicial estoppel should be invoked, and it acknowledged that additional considerations might weigh in favor of the doctrine's application in "specific factual contexts."  Id. at 751.

In this matter, in arguing that Yita and Jinrong should be judicially estopped from presenting invalidity defenses, MacNeil relies on two words (namely, "We agree") in Yita's and Jinrong's reply in support of their partially successful motion to stay this

ORDER - 4

litigation while the related IPR proceedings were pending before the PTAB.  *See* Pls.' Mot. for Estoppel at 5 (docket no. 116) (quoting Defs.' Reply at 2 (docket no. 72)).  The context of those words, however, does not warrant the estoppel relief requested by MacNeil.  In opposing Yita's and Jinrong's motion for a stay, MacNeil disparaged the IPR process by quoting from the dissent in a recent Supreme Court decision:  "Some say the new [IPR] regime presents a particularly efficient new way to 'kill' patents. . . .  In approximately 80% of cases reaching a final decision, the Board cancels some or all of the challenged claims."  Pls.' Resp. to Mot. to Stay at 7 (docket no. 71) (alteration in original, quoting *Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1379 (2020) (Gorsuch, J., dissenting)).  MacNeil then asserted that the IPR proceedings constituted Yita's and Jinrong's "one, and only, shot at invalidity."  *Id.*  According to MacNeil, if the IPRs failed, then Yita and Jinrong would have "no invalidity defense" and this matter would "simply" involve "an infringement determination for the jury."  *Id.*  Agreeing with this latter statement, Yita and Jinrong explained that the IPRs would "narrow and streamline the issues in this case, remove potential defenses, and efficiently eliminate any invalid [patent] claims before the Court is required to address them."  Defs.' Reply at 2 (docket no. 72).  Yita and Jinrong argued that the probable effects of forthcoming IPR decisions weighed in favor of a stay of this case, and they proclaimed that the parties shared this belief.  *Id.*

        The Court perceives no inconsistency between Yita's and Jinrong's earlier contentions about why a stay pending the PTAB's determinations would conserve judicial resources and their current efforts to challenge the patents-in-suit based on

ORDER - 5

arguments *not* raised in the IPR proceedings.  In light of the <u>New Hampshire</u> factors, the Court concludes that judicial estoppel is not justified by the record in this matter.

B. **IPR Estoppel**

Whether IPR estoppel applies is a matter of Federal Circuit law.  <u>See</u>, *e.g.*, <u>Sulzer Textil A.G. v. Picanol N.V.</u>, 358 F.3d 1356, 1363 (Fed. Cir. 2004) (Federal Circuit law governs issues "pertain[ing] to" or "unique to patent law" and substantive and procedural matters "intimately involved" in the "enforcement of the patent right").  When IPR proceedings result in a final written decision, petitioners are precluded from raising, in a civil action, invalidity grounds that they "raised or reasonably could have raised during" the IPR proceedings.  35 U.S.C. § 315(e)(2); <u>see also</u> <u>Cal. Inst. of Tech. v. Broadcom Ltd.</u>, 25 F.4th 976, 991 (Fed. Cir. 2022) (IPR "estoppel applies not just to claims and grounds asserted in the petition and instituted for consideration by the Board, but to all grounds not stated in the petition but which reasonably could have been asserted against the claims included in the petition").  In moving for IPR estoppel, MacNeil does not contend that Yita and Jinrong[3] are now asserting invalidity grounds that were actually raised in the IPRs, but rather that they are presenting grounds that reasonably could have been, but were not, raised in the IPRs.  Yita and Jinrong respond that the invalidity

---

[3] Although Jinrong was not a party to IPR2020-1138, -1139, -1140, or -1142, it was listed as one of the "real parties-in-interest" in all four petitions.  <u>See</u> Def.'s Mot. for Recons. at 2 (No. C20-856, docket no. 75).  In seeking reconsideration of the Court's denial of Jinrong's request for a stay, Jinrong indicated that, as a real party-in-interest in the IPR proceedings, it would be "treated just like a party for estoppel purposes."  <u>See id.</u>  Jinrong is represented by Mark Walters of the firm Lowe Graham Jones PLLC, who is also counsel of record for Yita and who appeared on Yita's behalf in the IPR proceedings.  Jinrong does not appear to dispute that it is subject to statutory estoppel to the same extent as Yita, and the Court so holds.  <u>See</u> 35 U.S.C. § 315(e)(2).

ORDER - 6

arguments they wish to pursue in this case could not have been raised in the IPRs because these contentions are outside the scope of subject matter allowed in an IPR petition.

An IPR petition may "request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). Section 102 precludes the issuance of a patent if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." Id. at § 102(a)(1). Section 103 does not allow a patent to be granted if "the differences between the claimed invention and the prior art are such that the claim invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." Id. at § 103.

### 1. Indefiniteness

MacNeil argues that Yita and Jinrong should be judicially estopped from raising indefiniteness challenges, but it appears to concede that IPR estoppel does not apply to such defenses. See Pls.' Mot. at 10 n.6 (docket no. 116). Neither § 102 nor § 103 concern the definiteness of patent claim language, and an IPR petitioner may not challenge patentability pursuant to § 112, which requires that the specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b); see also Intel Corp. v. Qualcomm Inc., 21 F.4th 801, 812–13 (Fed. Cir. 2021) (indicating that the PTAB need not decide "the patentability of a claim on the presented prior-art grounds if

such a determination is rendered impossible because of the indefiniteness of an essential claim limitation," and in such circumstances, "the statutory estoppel provision of 35 U.S.C. § 315(e) does not apply").  Thus, Yita and Jinrong are not barred by IPR estoppel from arguing that the patents-in-suit are invalid because certain claim terms are indefinite.  *See* Defs.' Invalidity Contentions at 4–5 (docket no. 115) (asserting that (i) "closely" or "substantially" conform or conforming, and (ii) "a" or "said" thickness or thicknesses being "substantially uniform throughout" are indefinite terms).[4]

### 2. Prior Art Product

Pursuant to § 102, Yita and Jinrong assert that the invention in the '186 Patent was anticipated by a product that was already for sale and in public use (a "prior art product"), namely a floor liner marketed by Husky Liners Incorporated ("Husky"), identified by part number as 33753, which was designed for the 2002 Ford Explorer.  *See id.* at 6–7 (docket no. 115); *see also* Bower Decl. at ¶¶ 2 & 4 (docket no. 115-14).  Yita and Jinrong further contend, under § 103, that the invention in the '834 Patent was obvious in light of Husky part number 33753, in combination with other prior art, including United States Application Publications Nos. 2003/0074174 ("Fu") and 2004/0068338 ("Macy"), as well as United States Patents Nos. 6,073,056 ("Gawronski"), 6,144,890 ("Rothkop"), and 6,279,425 ("Cicotte").  *See* Defs.' Invalidity Contentions at 7 (docket no. 115); *see also* Exs. 11 & 12 to Schaum Decl. (docket nos. 117-11 & 117-12).

---

[4] The Court, however, makes no ruling concerning whether Yita and/or Jinrong should be collaterally estopped by the PTAB's IPR decisions from asserting indefiniteness.  The parties should address this issue in their claim construction briefing.

ORDER - 8

Although items previously in public use, on sale, or otherwise available to the public might constitute grounds for declaring an invention unpatentable, they cannot themselves form the basis of an IPR challenge.  See 35 U.S.C. §§ 102(a)(1) & 311(b).  Yita and Jinrong contend that, because the primary reference on which they now rely is a prior art product, as opposed to a patent or printed publication, their invalidity challenge predicated on Husky part number 33753 is not subject to IPR estoppel.  MacNeil replies that Husky's advertisements for part number 33753 qualify as printed publications that not only could have been, but actually were, presented to the PTAB during the IPR proceedings involving the '186 and '834 Patents.  Whether printed references that relate to a prior art product, and that were publicly available at the time of an IPR, preclude a litigant from subsequently advancing invalidity arguments premised on the product itself is an issue with which district courts have grappled and as to which the Federal Circuit has not yet offered guidance.  See Boston Sci. Corp. v. Cook Grp. Inc., No. 17-cv-3448, 2023 WL 1452172 (S.D. Ind. Jan. 31, 2023); Willis Elec. Co. v. Polygroup Macau Ltd. (BVI), No. 15-cv-3443, --- F. Supp. 3d ---, 2023 WL 112733 (D. Minn. Jan. 5, 2023); DMF, Inc. v. AMP Plus, Inc., No. 18-cv-7090, 2021 WL 6499980 (C.D. Cal. May 5, 2021);[5] Medline Indus., Inc. v. C.R. Bard, Inc., No. 17 C 7216, 2020 WL 5512132

---

[5] In attempting to discern whether a bona fide prior-art-product-based challenge is being offered, the Central District of California asks whether "*some substantive* difference" exists between the physical product and an estopped patent or printed publication that is "germane to the invalidity dispute at hand."  See DMF, 2021 WL 6499980, at *3 (emphasis in original, quoting Cal. Inst. of Tech. ("CalTech") v. Broadcom Ltd., No. CV 16-3714, 2019 WL 8192255, at *8 (C.D. Cal. Aug. 9, 2019), corrected by 2019 WL 8807924 (C.D. Cal. Nov. 21, 2019), aff'd 25 F.4th 976 (Fed. Cir. 2022), petition for cert. filed, No. 22-203 (Sept. 7, 2022)).

ORDER - 9

(N.D. Ill. Sept. 14, 2020); <u>Wasica Fin. GmbH v. Schrader Int'l, Inc.</u>, 432 F. Supp. 3d 448 (D. Del. 2020);[6] <u>Polaris Indus., Inc. v. Arctic Cat Inc.</u>, No. 15-4475, 2019 WL 3824255 (D. Minn. Aug. 15, 2019); <u>Milwaukee Elec. Tool Corp. v. Snap-On Inc.</u>, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017) (indicating that a party may not "skirt" IPR estoppel "by purporting to rely on a device without actually relying on the device itself" and instead using "written descriptions of . . . [physical] specimens"); <u>Star Envirotech, Inc. v. Redline Detection, LLC</u>, No. SACV 12-1861, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015).[7]

In a recent decision, namely <u>Boston Scientific</u>, which was issued only two days before MacNeil filed its motion for IPR estoppel, and which neither of the parties cited in their briefing, the district court articulated the following three-part burden-shifting

---

[6] In <u>Wasica</u>, the district court reasoned that "grounds" for asserting invalidity are distinct from "evidence" supporting those grounds, that § 315(e)(2) imposes estoppel as to "grounds," not "evidence," and that an IPR petitioner may not later, in litigation, rely on "grounds" raised in the IPR proceeding even if the "evidence" it proffers in support could not have been used in the IPR. <u>See</u> 432 F. Supp. 3d at 454–55. The <u>Wasica</u> Court applied IPR estoppel with respect to three obviousness challenges that relied in part on a prior art product (a sensor made for the Chevrolet Corvette ZR-1), which was "materially identical" to a printed publication (the 1990 Siuru article) disclosing all of its relevant features. <u>Id.</u> at 452–55; <u>see also</u> <u>Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.</u>, No. 19-cv-2754, 2021 WL 8693677, at *1–2 (W.D. Tenn. Oct. 8, 2021) (citing <u>Wasica</u> and granting a motion in limine to exclude §§ 102 and 103 invalidity grounds, finding that confidential, internal documents were not needed to understand the relevant limitations of the prior art product, which had been adequately described in publicly available documents, and thus, IPR estoppel applied as to product).

[7] In <u>Star Envirotech</u>, the district court concluded that, although the defendants possessed, at the time of their IPR proceeding, the instruction manual for a smoke machine known as the LeakMaster A240, they were not estopped from relying on the LeakMaster A240 in connection with their invalidity contentions because the physical machine disclosed features not included in the manual and was therefore "a superior and separate reference." 2015 WL 4744394, at *3–4. The <u>Star Envirotech</u> "superior and separate reference" test does not appear to have gained any traction, and the Court declines to adopt it. <u>See</u> <u>CalTech</u>, 2019 WL 8192255, at *7 (rejecting the "superior and separate reference" standard); <u>see also</u> <u>DMF</u>, 2021 WL 6499980, at *3–4; <u>SPEX Techs. Inc. v. Kingston Tech. Corp.</u>, No. SACV 16-1790, 2020 WL 4342254, at *15 (C.D. Cal. June 16, 2020).

ORDER - 10

standard.[8]  First, the patentee bears the burden of showing that "each and every material limitation present in the physical device" is disclosed in one or more estopped references. 2023 WL 1452172, at *34.  The burden then shifts to the patent challenger to identify a material limitation that is disclosed in the physical device, but not in any estopped reference.  Id.  The burden then shifts back to the patentee to demonstrate that the limitation identified by the challenger is either (i) not material, or (ii) actually disclosed in an estopped reference.  Id.  After using this test, the Boston Scientific Court precluded the defendants from relying on one of five prior art products, which was "materially identical" to a patent that constituted "estopped prior art," but concluded that the plaintiffs had not met their burden of showing that all material limitations present in the other four physical devices were disclosed in an estopped reference.  Id. at *35–36.

       Having reviewed Boston Scientific and the district court rulings preceding it, the Court concludes that, as to the anticipation and obviousness contentions premised on the Husky product, MacNeil's motion for IPR estoppel is premature.  An appropriate analysis requires the Court to construe the patents-in-suit to understand which limitations of Husky part number 33753 are "material" and whether they were disclosed in related publications.  Claim construction briefing will not, however, be completed until June 2023.  Thus, the portion of MacNeil's motion seeking IPR estoppel as to the Husky prior art will be stricken.  MacNeil may renew its estoppel request after the claim

---

[8] Whether Boston Scientific's burden-shifting analysis is consistent with 35 U.S.C. §§ 311(b) and 315(e)(2), whether the Court should adopt the three-part standard, and, if so, how it should be applied in this case are questions for another day.

ORDER - 11

construction process concludes, and it may then supplement the record to include the Husky product catalogs that were before the respective patent examiners and any other relevant Husky documents that were publicly available at the time the IPR petitions at issue were filed.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) MacNeil's motion, docket no. 116, is DENIED in part as to judicial estoppel, DENIED in part as to IPR estoppel concerning any indefiniteness challenges, and STRICKEN in part without prejudice as to IPR estoppel regarding invalidity contentions based on Husky part number 33753.

(2) The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

DATED this 23rd day of March, 2023.

Thomas S. Zilly
United States District Judge