UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MacNEIL AUTOMOTIVE PRODUCTS LIMITED d/b/a WEATHERTECH; and MacNEIL IP LLC,<br><br>Plaintiffs,<br><br>v.<br><br>YITA, LLC d/b/a Oedro or YitaMotor; and JINRONG (SH) AUTOMOTIVE ACCESSORY DEVELOPMENT CO., LTD.,<br><br>Defendants. | C20-0278 TSZ<br>(consolidated with C20-0856 TSZ)<br><br>ORDER |

THIS MATTER[1] comes before the Court to construe certain claim terms ("foot well wall" and "substantially uniform thickness") of United States Patent No. 8,833,834

---

[1] In May 2022, C20-278 and C20-856 were consolidated for pretrial purposes. See Minute Order at ¶ 1 (docket no. 87). At that time, the Court deferred ruling on whether the actions would be consolidated for trial, but noted that the parties had stipulated to consolidation of the cases for all purposes and that defendants' later objection to consolidation was not sufficient to render ineffective the parties' prior agreement. See id. at ¶ 1 & n.1. Since then, three of the four patents-in-suit in both C20-278 and C20-856 have been declared invalid by either the Patent Trial and Appeal Board ("PTAB") or the United States Court of Appeals for the Federal Circuit. The state law and Lanham Act claims alleged against defendant Yita, LLC ("Yita") in C20-278, as well as the patent infringement claim involving United States Patent No. 8,833,834, which is asserted against Yita in C20-278 and against defendant Jinrong (SH) Automotive Accessory Development Co., Ltd. in C20-856, have now been set for trial. See Minute Order at ¶ 3 (docket no. 182). Given the procedural posture of these matters, the Court hereby CONSOLIDATES them for all purposes, including trial, and AMENDS the caption as shown in this Order.

ORDER - 1

("'834 Patent")[2] pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995), and <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005). Having reviewed the parties' respective opening and response briefs, docket nos. 137, 138, 141, and 143, and the supporting materials appended to the declarations of plaintiffs' counsel John Whitaker, docket no. 139, and defendants' attorney Mark Walter, docket no. 142, as well as the '834 Patent, Ex. 4 to 3d Am. Compl. (docket no. 144-4), the Court enters the following Order.

**Background**

**A.     The '834 Patent**

The '834 Patent discloses a system comprised of a "vehicle foot well" and a "vehicle floor tray" that "is molded from a sheet of polymeric material of substantially uniform thickness." '834 Patent at Abstract (docket no. 144-4 at 2). The specification explains that, because "[h]uman beings have a tendency to move their feet around, and foot motion is an absolute requirement in operating most vehicles," conventional vehicle

---

[2] In their briefs filed in mid-May and early June 2023, the parties asked the Court to construe these same claim terms, as well as one other term ("closely conforming"), in connection with United States Patent No. 8,382,186 ("'186 Patent"). On June 6, 2023, the '186 Patent was declared invalid, <u>see</u> <u>Yita LLC v. MacNeil IP LLC</u>, 69 F.4th 1356 (Fed. Cir.), <u>cert. denied</u>, 144 S. Ct. 499 (2023), and the Court stayed this case pending <u>inter alia</u> resolution of MacNeil IP LLC's related petitions for panel rehearing, rehearing en banc, and writ of certiorari, <u>see</u> Minute Order at ¶¶ 1–3 (docket no. 154). After being advised by the parties that a writ of certiorari had been denied, the Court dismissed as moot the infringement claim relating to the '186 Patent, <u>see</u> Minute Order at ¶ 1 (docket no. 172), and subsequently lifted the stay of this matter, <u>see</u> Minute Order at ¶ 2 (docket no. 182). Because the '186 Patent is no longer a patent-in-suit, the Court need not address the parties' arguments concerning the meaning of "closely conforming," and, with respect to the phrases "foot well wall" and "substantially uniform thickness," the Court will consider only the parties' contentions relating to the '834 Patent.

ORDER - 2

"floor mats end up not being centered on the area protected, or pushed up so as to occlude the gas, brake, or clutch pedals, or bunched up or folded over," which are "all undesirable conditions." *Id.* at 1:35–42.  In lieu of floor mats, vehicle owners may install floor trays, which "have sidewalls that offer enhanced protection to the surfaces surrounding the vehicle floor," but in December 2013, when the application for the '834 Patent was filed, conventional trays exhibited "less than optimum" fit, and they had experienced "limited consumer acceptance." *See id.* at 1:58–2:7.  The invention described in the '834 Patent attempted to address the need "for a floor tray that will have a more exact fit to the vehicle foot well," that "stays in place once it is installed," and that "provides a more solid and certain feel to the occupants' feet." *See id.* at 2:12–16.

Isometric and top views of a commercial embodiment of the claimed vehicle floor tray are shown below.



*Id.* at Figs. 1 & 2.  As illustrated, the floor tray **100** has (i) a "floor or central panel **102**," with both forward **106** and rearward **108** regions, (ii) "a series of upstanding side panels,

ORDER - 3

1 which will vary in number and configuration from one vehicle model to the next," but generally including a back panel **130**, an inner side panel **132**, a forward panel **134**, an outer side panel **136**, and a door sill panel **140**, (iii) subpanels **200** and **202**, which join the forward portion **106** of the central panel **102** to the forward panel **134**, (iv) transitions **204** and **206** that join the central panel **102** with, respectively, the inner side **132** and back **130** panels, (v) a transition **208** between the outer side panel **136** and the door sill panel **140**, (vi) curved transitions **210**, **212**, **214** between adjacent side panels, (vii) a "plurality of fore-to-aft or longitudinal parallel straight channels **104**," which are "designed to channel liquid runoff from the user's feet or footwear to the reservoir **110**," which has a plurality of tread surfaces or baffles **118** that serve "to elevate the shoe or foot of the occupant above any fluid" and "to prevent this accumulated fluid from sloshing around," and (viii) "a space **116** on the forward right hand side [that] has been left open to receive the foot of the driver," which will operate "the accelerator and brake pedals" See id. at 6:21–8:64.

The '834 Patent contains fifteen (15) claims, three of which (Claims 13–15), have been declared invalid. See Yita, 69 F.4th at 1358. Of the remaining twelve (12) claims, three (Claims 1, 5, and 9) are independent. Claim 1 is illustrative and reads:

> 1. A system including a vehicle and a floor tray for consumer installation into a predetermined foot well of the vehicle, the system comprising:
>
> a vehicle foot well having a floor, a substantially longitudinally disposed first foot well wall upstanding from the floor, a substantially transversely disposed second foot well wall upstanding from the floor and joined to the first foot well wall, a substantially longitudinally disposed third foot well wall upstanding from the floor and joined to the second foot well wall; and

ORDER - 4

a vehicle floor tray molded from a sheet of polymeric material of **substantially uniform thickness**, a central panel of the tray substantially conforming to the floor of the vehicle foot well, a substantially longitudinally disposed first tray wall joined to the central panel by a curved transition and standing up from the central panel to substantially conform to the first **foot well wall**, a substantially transversely disposed second tray wall joined to the central panel and to the first tray wall by respective curved transitions and standing up from the central panel, the second tray wall substantially conforming to the second **foot well wall**, a substantially longitudinally disposed third tray wall joined to the central panel and to the second tray wall by respective curved transitions and standing up from the central panel, the central panel and first, second and third tray walls each having an outer surface facing the vehicle foot well and an inner surface opposed to the outer surface, **a thickness** of the central panel and of the, [sic] first, second and third tray walls measured between the outer surface and the inner surface thereof being **substantially uniform** throughout the tray;

at least 90 percent of that one-third of the outer surfaces of the first, second and third tray walls which are closest to the respective top margins of the first, second or third tray walls being within one-eighth of an inch of the respective **foot well walls**.

'834 Patent at 20:4–40 (emphasis added). The disputed claim terms ("foot well wall" and "substantially uniform thickness") are shown in bold text and highlighted in yellow. The difference between Claim 1 and Claims 5 and 9 involves the amount of the outer surfaces of the first, second, and third tray walls (expressed as a percentage) that must be within one-eighth of an inch (⅛″) of the respective foot well walls. See id. at 21:30–35 & 22:26–28.

B. **The Disputed Claim Terms**

With regard to the phrase "foot well wall," the parties' dispute concerns whether such term includes any carpeting that might be covering the surface of the foot well wall. Defendants propose to construe "foot well wall" as meaning "[t]he top surface of the foot

ORDER - 5

1 well wall, *i.e.*, not including the carpet." See Jt. Claim Chart (docket no. 131-1); Defs.'
2 Opening Br. at 15 (docket no. 137). Plaintiffs ask that the term "foot well wall" be
3 assigned its plain and ordinary meaning. See Jt. Claim Chart (docket no. 131-1); Pls.'
4 Opening Br. at 17 (docket no. 138).

5 With respect to the term "substantially uniform thickness," the parties disagree
6 about whether the thickness of the central panel and of the first, second, and third tray
7 walls must have the same uniformity as the thickness of the sheet of polymeric material
8 from which the vehicle floor tray is molded. See Jt. Claim Chart (docket no. 131-1).
9 Defendants suggest that "[t]he claimed thicknesses after thermoforming" must be "no
10 more variable than the thickness of the sheet of thermoplastic prior to thermoforming."
11 Defs.' Opening Br. at 18 (docket no. 137). Plaintiffs assert that the words "substantially
12 uniform thickness" do not require interpretation. Pls.' Opening Br. at 1 & 18–19 (docket
13 no. 138). Plaintiffs further argue that, as a result of thermoforming, the final product will
14 necessarily be less uniform in thickness than the starting sheet of polymeric material, and
15 thus, defendants' proposed construction is "untenable." *Id.* at 19–20.
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23

ORDER - 6

**Discussion**

**A.     Claim Construction Standards**

The words of a patent claim are generally assigned their "ordinary and customary" meaning.[3]  *Phillips*, 415 F.3d at 1312.  If the specification,[4] however, reveals a different definition, then the inventor's lexicography will trump the "ordinary and customary," or dictionary, construction.  *Id.* at 1316.  When the claim terms are clear enough to permit the trier of fact to perform its work, the Court need not engage in further analysis or attempt to rewrite or otherwise alter the language that has received the imprimatur of the United States Patent and Trademark Office.  *See* *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001); *see also* *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 502 F. Supp. 2d 568, 575–76 (E.D. Ky. 2007).

**B.     Foot Well Wall**

The Court agrees with plaintiffs that "foot well wall" means what it says, namely the wall of the foot well of the vehicle.  In arguing that "foot well wall" refers to only the "top surface" of the wall, not including the carpet, defendants attempt to improperly import a limitation into the claim language.  Moreover, defendants' suggestion that the

---

[3] The "ordinary and customary" meaning of a claim term is the definition ascribed to it by "a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

[4] Although the specification is "the single best guide to the meaning of a disputed term," it must not be used to import limitations into the claims of the patent. *Phillips*, 415 F.3d at 1315 & 1323.  Similarly, although the prosecution history evidences how the inventor understood the terms of the patent claims, *id.* at 1317, the prosecution history may not itself "enlarge, diminish, or vary" the limitations in the claims, *Markman*, 52 F.3d at 980.

ORDER - 7

carpet should be ignored is inconsistent with the specification, which makes clear that "[t]ypically, this [top] surface is carpeted." '834 Patent at 12:11–12; see also id. at 19:22–25 ("The produced vehicle floor tray will nonetheless fit tightly to the vehicle foot well because . . . the floor carpeting will be depressed to a greater extent under the reservoir than in peripheral areas . . . ."). In addition, the preambles of the independent patent claims indicate that the foot well of the vehicle must be considered as it would be found by a consumer, who will install the vehicle floor tray. See id. at Claims 1, 5, and 9 (disclosing "[a] system including a vehicle and a floor tray *for consumer installation* into a predetermined foot well of the vehicle, the system comprising . . . ." (emphasis added)); see also Yita LLC v. MacNeil IP LLC, IPR2020-1142, Final Written Decision at 16 n.3 (P.T.A.B. May 26, 2022), Ex. N to Whitaker Decl. (docket no. 139-14) (treating the preamble as limiting). To the extent the foot well is typically in a carpeted condition when a consumer would install the floor tray, then the term "foot well wall" cannot be restricted to an uncarpeted status. The Court REJECTS defendants' proposed construction of "foot well wall," and DECLINES to ascribe to the term something other than its plain meaning.

C.      **Substantially Uniform Thickness**

Defendants' suggested interpretation of "substantially uniform thickness" likewise lacks merit. The adverb "substantially" is a term of approximation generally understood to indicate "largely but not wholly that which is specified," LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347, 1354 (Fed. Cir. 2001), and thus, "substantially uniform thickness" denotes a "thickness with approximate uniformity," Dana Corp. v.

ORDER - 8

*Am. Axle & Mfg., Inc.*, 110 F. App'x 871, 877 (Fed. Cir. 2004).  Claim 1 uses the term "substantially uniform thickness" to describe "a sheet of polymeric material" from which a vehicle floor tray is molded.  Defendants make no argument that the phrase is unclear or indefinite[5] in this context.  Rather, defendants contend that any variation in thickness after the floor tray is manufactured cannot exceed the variation in thickness of the starting material.  The claim language cannot be read in this manner.  It does not require any comparison between the uniformity of the polymeric sheet's thickness and the uniformity of the end product's thickness.  Although defendants aptly rely on the principle that claim terms must be consistently construed, the conclusion does not follow that an item cannot be of substantially uniform thickness unless it varies in thickness less than another item (or a starting material) of substantially uniform thickness.  *See Dana Corp.*, 110 F. App'x at 876 ("We hold that 'substantially uniform wall thickness' is properly construed to mean that the wall of the tube is largely or approximately uniform in thickness, but may vary at least as much as the wall thickness varied prior to swaging *plus* the variation in

---

[5] Although the parties have discussed in their respective briefs the issue of indefiniteness, the Court need not address the subject because (i) the only claim term that defendants assert is indefinite ("closely conforming") does not appear in the '834 Patent; and (ii) defendants' accusation of indefiniteness relating to the phrase "substantially uniform thickness" does not concern the phrase itself, but rather plaintiffs' proposed interpretation, which was offered as an alternative in the event the Court concludes the term must be construed, namely "[s]ufficiently uniform in thickness such that the function of the tray features are acceptable to a Person of Ordinary Skill in the Art as though the respective features were uniform in thickness." *See* Pls.' Opening Br. at 18–23 (docket no. 138); *see also* Jt. Claim Chart (docket no. 131-1).  Defendants argue that plaintiffs' alternative construction is indefinite, and plaintiffs contend that defendants are collaterally estopped from raising indefiniteness because the theory was not presented to the PTAB.  Given its ruling that the term "substantially uniform thickness" needs no clarification, the Court DECLINES to adopt plaintiffs' alternative definition or to further address the topics of indefiniteness and collateral estoppel.

ORDER - 9

wall thickness that necessarily results from swaging the tube in accordance with the claimed invention . . . ." (emphasis in original)).  Contrary to defendants' contention, whether the pre-molded polymeric sheet has more or less uniformity in thickness than the fabricated floor tray is not an element of the patent claims, and the Court DECLINES to assign to the phrase "substantially uniform thickness" a meaning other than an "ordinary and customary" one.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The disputed claim terms "foot well wall" and "substantially uniform thickness" need not be further construed; and

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 23rd day of August, 2024.

Thomas S. Zilly
United States District Judge

ORDER - 10