UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MacNEIL AUTOMOTIVE PRODUCTS
LIMITED d/b/a WEATHERTECH;
WEATHERTECH DIRECT, LLC; and
MacNEIL IP LLC,

　　　　　　　Plaintiffs,

　　v.

YITA, LLC d/b/a Oedro or YitaMotor;
and JINRONG (SH) AUTOMOTIVE
ACCESSORY DEVELOPMENT CO.,
LTD.,

　　　　　　　Defendants.

C20-0278 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1)　Having reviewed the parties' briefs, docket nos. 338 and 341, in response to the Minute Order entered August 28, 2025, docket no. 326, and having studied the Federal Circuit's jurisprudence on the subject, the Court concludes that it must, in advance of trial, decide whether to instruct the jury on lost profits as a possible element of damages in connection with plaintiffs' patent infringement claim. See Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293 (Fed. Cir. 2007) ("the availability of lost profits is a question of law for the court, not the jury"). In Wechsler, the Federal Circuit explained that "[o]nly after the court has decided, as a matter of law, that lost profits are available does the jury then get to determine the amount of those lost profits." Id. at 1293; see Mitutoyo Corp. v. Cent. Purchasing, LLC, 499 F.3d 1284, 1288–89 & 1291 (Fed. Cir. 2007) (affirming the trial court's decision during dispositive motion practice that the plaintiff was not entitled to a lost profits award for either patent infringement or breach of contract because it failed to establish any market overlap between its goods and those of the defendant, indicating that "[w]hether a party may receive lost profits is a question of law"); see also Calico Brand, Inc. v. Ameritek Imports, Inc., 527 F. App'x

MINUTE ORDER - 1

987, 995–97 (Fed. Cir. 2013) (concluding that the district court improperly permitted the jury to consider lost profits damages and then erred in denying the defendant's motion for judgment as a matter of law on the subject). The Federal Circuit has made clear that the Court serves a gate-keeping role, instructing a jury to consider lost profits as an element of damages in a patent infringement matter only after determining that the plaintiff has made the requisite threshold showing. See Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1288 (Fed. Cir. 2011) ("We perceive no legal error in the district court's decision to permit the jury to award lost profits damages."). The cases cited by plaintiffs do not support a different result. See Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341 (Fed. Cir. 1999) (involving a bench trial following which the district court initially and on remand denied the plaintiff's request for lost profits); see also Exergen Corp. v. Kaz USA, Inc., 725 F. App'x 959 (Fed. Cir. 2018) (concerning two competitors vying to be the sole brand offered on shelves alongside the store's generic product and a lost profits award that was vacated because the jury's finding of patent infringement was not supported by the evidence); Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255, 1264 (Fed. Cir. 2013) (observing that "[c]ausation of lost profits 'is a classical jury question,'" but not addressing how the district court should determine whether the anticipated evidence actually presents a "classical" question of causation for a jury to consider). Plaintiffs' suggestion that the Court cannot decide whether acceptable, non-infringing substitutes exist merely because the question is one of fact,[1] rather than law, ignores the standard for summary judgment, which authorizes the Court to determine a question of fact or law when the absence of any genuine dispute of material fact has been established. See Fed. R. Civ. P. 56(a); see also NeuroGrafix v. Brainlab, Inc., No. 12 C 6075, 2020 WL 489529 (N.D. Ill. Jan. 30, 2020) (granting summary judgment against the plaintiffs with respect to lost profits); Good Tech. Corp. v. MobileIron, Inc., No. 12-cv-5826, 2015 WL 3882608 (N.D. Cal. June 23, 2015) (granting summary judgment because the plaintiff failed, as a matter of law, to establish a demand for its product); Avidyne Corp. v. L-3 Commc'ns Avionics Sys., Inc., No. 05-11098, 2012 WL 1067645, at *2 (D. Mass Mar. 29, 2012) (granting summary judgment against the patent owner because the evidence offered during dispositive motion practice was "too weak to justify [an] inference" that the patentee "*could* have" and "likely *would* have" sold a device "earlier but for [the] infringer's interference" (emphasis in original)); Innovention Toys, LLC v. MGA Ent., Inc., No. 07-6510, 2011 WL 13203133 (E.D. La. Feb. 3, 2011) (granting summary judgment because the plaintiff failed to establish the manufacturing and marketing capability to make the sales that were diverted to the defendants).

---

[1] See Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1577 (Fed. Cir. 1992) ("The existence of a noninfringing substitute is a question of fact, reviewable under the clearly erroneous standard.").

MINUTE ORDER - 2

(2) Plaintiffs are hereby given notice that the Court is inclined to rule that they have failed to make the prima facie showing required to support a jury instruction on lost profits as a potential element of damages. To recover lost profits, a patent owner must prove that "but for" the infringement, it would have made the infringer's sales. See BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc., 1 F.3d 1214, 1218 (Fed. Cir. 1993) (citing Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 671 (Fed. Cir. 1988)). The parties have agreed on the applicability of the non-exclusive test for a patentee's entitlement to lost profits that was first articulated in Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978). See Pls.' Supp. Br. at 9 (docket no. 341); Defs.' Supp. Br. at 9–10 (docket no. 338). In Panduit, the Sixth Circuit indicated that, to obtain lost profits damages, a patent owner must prove: (i) demand for the patented product, (ii) absence of acceptable non-infringing substitutes, (iii) manufacturing and marketing capability to exploit the demand, and (iv) the amount of lost profits. See Panduit, 575 F.2d at 1156. Plaintiffs are tasked with presenting "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255–57 (1986). They must show a "reasonable probability" that, absent the alleged infringement, they would have made defendants' sales. See BIC Leisure, 1 F.3d at 1218. They have not done so.

No genuine dispute of material fact exists with regard to (i) the significant price disparity between defendants' accused products and plaintiffs' "mapped" products, see Haas Report at ¶ 96 (docket no. 364) (acknowledging that plaintiffs' "mapped" products are priced 84.6% higher than defendants' accused products); Granger Report at ¶ 64 (docket no. 282-2) (indicating that consumers would have paid 89.9% more for plaintiffs' two-row set of floor trays for a 2020 Honda Accord than for defendants' comparable kit); Olsen Rebuttal Report at ¶ 25 & Table 1 (docket no. 317) (setting forth an average price for plaintiffs' products that is roughly double the average price for defendants' products); (ii) the different marketing channels in which plaintiffs' and defendants' vehicle floor trays are sold, see Haas Report at ¶ 41 (docket no. 364) ("most of" the accused products "are sold in the U.S. via online retailers, such as Amazon, eBay, Walmart, and Shopify"); see also Granger Report at ¶¶ 65–66 (docket no. 282-2) (indicating that plaintiffs sell an unquantified portion of their floor trays, on a wholesale basis, to parts departments of car dealerships or to original equipment manufacturers ("OEMs"), which then offer them to consumers); and (iii) the presence within the market of cheaper alternatives to plaintiffs' products, which plaintiffs have not shown to be either infringing or unacceptable. Plaintiffs' damages expert's opinion that vehicle floor trays falling outside the patent-in-suit's ⅛-inch tolerance for conforming to the vehicle foot well have a "sloppier" fit, which allows (i) "more dirt, debris, and liquids to penetrate into the underlying foot wells," and (ii) "more unwanted movement of the floor tray," making such products "undesirable and unacceptable to consumers," Haas Report at ¶ 54 (docket no. 364), is conclusory. Nowhere in his report does plaintiffs' damages expert indicate what level of conformance to the vehicle foot well is offered by the various competitors' floor trays or how much tolerance results in a "sloppier" fit. Moreover, although their damages expert

MINUTE ORDER - 3

1  relies primarily on plaintiffs' market share in his lost profits calculations, plaintiffs have not provided market share data for any year other than 2023, see id. at ¶ 56 (relying on WeatherTech Direct, LLC President Ryan Granger's estimate that, in 2023, plaintiffs had a 70% share of the market based on revenue), have not explained how their wholesale business (i.e., direct sales to dealerships and OEMs) is reflected in their market share, and have not addressed defendants' expert's opinion that plaintiffs' share of the online market, through which defendants' accused products are sold in the United States, is only twelve percent (12%), whereas leading competitor Husky's share is eight percent (8%), see Olsen Rebuttal Report at ¶ 22 & Fig. 1 (docket no. 317) (listing the relative market shares of the top ten brands on the Amazon platform, via which defendants made "the majority" of their sales).  The proposition that plaintiffs would have made an adjusted market share (i.e., 66.5%, rather than 70%) of defendants' allegedly infringing (online) sales appears to be nothing more than speculation.  Absent reference during oral argument on November 13, 2025, to materials already in the Court's record that address the deficiencies identified in this Paragraph 2, the Court will grant partial summary judgment in favor of defendants and strike plaintiffs' prayer for lost profits damages as to their patent infringement claim.  In such event, plaintiffs' "damages adequate to compensate for" any patent infringement would be limited to "a reasonable royalty for the use made of the invention by the infringer, together with interest and costs." See 35 U.S.C. § 284.

(3)  Plaintiffs are hereby given further notice that the Court is inclined to apply the analysis set forth in Paragraph 2 to plaintiffs' trade dress infringement claims.  Absent reference during oral argument on November 13, 2025, to materials already in the Court's record that address the deficiencies in plaintiffs' damages expert's analysis (i.e., reliance on market share data for only one year, failure to account for marketing channels in which defendants did not participate, and lack of information about sales via online platforms), the Court is inclined to grant the related, previously deferred, portion of defendants' motion to exclude the testimony of plaintiffs' damages expert David A. Haas, docket no. 254, and strike plaintiffs' prayer for lost profits damages as to plaintiffs' Lanham Act and state law claims.  Plaintiffs' recovery under the Lanham Act would then be restricted to the disgorgement of defendants' profits and "the costs of the action," see 15 U.S.C. § 1117(a), both of which would be decided by the Court, not the jury, see Minute Order at ¶ 4 (docket no. 345); see also Local Civil Rule 54(d).

(4)  With respect to the remaining state law claims, namely Count I asserted under state common law and Count V brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), plaintiffs are DIRECTED to show cause during oral argument on November 13, 2025, as follows:

    (a)  Why the Court should not conclude that Washington law governs as to the state common law claim and that plaintiffs would not be entitled to punitive damages under Washington law;

MINUTE ORDER - 4

(b)     Why the Court should not dismiss the state common law and ICFA claims on the ground that plaintiffs' damages expert (David A. Haas) has offered no opinion concerning what damages plaintiffs incurred or could recover in connection with such state law claims;

(c)     Why the Court should not dismiss the state common law and ICFA claims on the alternative ground that, if Illinois law governs, as plaintiffs contend, it has no extraterritorial effect, and plaintiffs have not pleaded or proffered evidence of any trade dress infringement activities, as opposed to sales or damages, that occurred in Illinois, see Landau v. CNA Fin. Corp., 886 N.E.2d 405, 407–09 (Ill. App. Ct. 2008); see also Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 852–53 (Ill. 2005);

(d)     If the state law claims survive, why the Court should not limit any damages to those traceable to infringement that was committed within Illinois, see Motorola Sols., Inc. v. Hytera Commc'ns Corp., 436 F. Supp. 3d 1150, 1167–68 (N.D. Ill. 2020) (concluding that the Copyright Act has no extraterritorial application and damages incurred abroad must be directly related to infringement within the United States); see also L.A. News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 990–92 (9th Cir. 1998) (holding that the plaintiff was entitled "to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by" the defendants); and

(e)     Why the Court should not strike plaintiffs' request for punitive damages under state law on the ground that plaintiffs failed to plead such relief in their operative pleading, see 3d Am. Compl. (docket no. 144), or include it in the proposed pretrial order, docket no. 353.[2]  See Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."); see also Howard v. Raytheon Co., No. CV 09-5742, 2011 WL 13177257, at *4–5 (C.D. Cal. Mar. 28, 2011).  But see Cancellier v. Federated Dep't Stores, 672 F.2d 1312, 1319 (9th Cir. 1982) ("No specific prayer for emotional distress or punitive damages is needed." (citing Fed. R. Civ. P. 54(c) ("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."))).

---

[2] This issue was raised for the first time in defendants' recent brief, docket no. 367.  Plaintiffs' motion, docket no. 369, to strike defendants' brief and to impose sanctions on defendants, is DENIED.  Plaintiffs may file a response to defendants' brief, not to exceed ten (10) pages in length, by November 6, 2025.  No reply shall be filed by defendants.

MINUTE ORDER - 5

(5)     The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 30th day of October, 2025.

Ravi Subramanian
Clerk

s/Grant Cogswell
Deputy Clerk

MINUTE ORDER - 6